St. Paul Distilling Company *vs.* Daniel R. Pratt, impleaded, etc.

### January 12, 1891.

**Evidence—Findings.**—Evidence *held* sufficient to sustain the findings of fact.

**Waiver of Jury Trial.**—Certain proceedings *held* to be a waiver of a trial by jury.

**Conspiracy to Defraud—Proof of Formation of Conspiracy.**—In an action for a conspiracy to defraud, conversations and correspondence between two or more of those charged, tending to prove the formation of the conspiracy before it was joined by another of the defendants, are admissible. If the evidence, when all in, does not connect such other with the conspiracy, his proper course is by motion to dismiss, or for instruction to the jury.

**Same—Measure of Damages.**—Where the conspiracy was to procure from a corporation, through a breach of his duty to the corporation of its officer and trusted agent, a contract to construct buildings for it at a price beyond the actual cost, the difference to be divided between such officer and the others conspiring with him, and where the contract has been performed and the contract price paid, the measure of damages in an action by the corporation is the excess of the contract price above the cost of the work.

Plaintiff brought this action in the district court for Ramsey county against Geo. W. Hicks and his wife, John R. Joslyn, and Daniel R. Pratt, all of Elmira, N. Y., and J. H. Sanders of St. Paul, alleging that Hicks, Pratt and Joslyn conspired to cause the plaintiff company to be organized and its stock subscribed for, and to secure from plaintiff a construction contract and large amounts of its capital

stock; without consideration as in the complaint particularly set forth. The complaint then proceeds to allege the acts done by the defendants above named substantially as stated in the findings of the court, and further alleges that the treasurer of plaintiff, also made a defendant, was at the time the contract was let, cognizant of the price at. which it might have been let, and of the fraudulent means used by the other defendants to obtain the contract, and that he actually conspired with them and assisted them in getting the contract under a promise that he should have a share of the expected profits. The complaint further alleges that the $30,000 of plaintiff's stock, (being part of the $100,000 subscribed for Hicks,) which was at Hicks's direction issued to his wife, was received by her without consideration and with full knowledge of the fraud, and was held by her for her husband's use. It is also alleged that by reason of the conspiracy and the acts in pursuance of it the plaintiff has been damaged in the sum of $100,000, and at least that amount of its stock was procured by defendants without consideration; that Hicks and his wife are insolvent, and have been actively trying to sell their stock to innocent purchasers, and will effect such sale unless restrained by injunction. Judgment is demanded as follows: (1) That Hicks and wife be decreed to surrender to plaintiff the $30,000 of stock now held by her, and that a temporary injunction issue restraining any transfer by them, and that plaintiff have judgment against each of the other four defendants for $70,000; or (2) if the stock held by Mrs. Hicks cannot be ordered to be surrendered, then that plaintiff have judgment against each of the other four defendants for the sum of $100,000, with interest and costs; and (3) for such other and further relief as may be equitable. The defendants Hicks and wife and Joslyn were not served and did not appear. The other defendants answered separately, putting in issue the matters alleged against them respectively. The action being called for trial before *Brill*, J., without a jury, the defendant Pratt moved for a jury trial, because the failure to serve Hicks and wife leaves the action one for damages for fraud alone, and not an action in equity. It appearing that the action had been placed on the calendar as a "court case" by consent of all parties at a former term, and by consent continued, and that no claim

had been made that the action was a "jury case" until it was called for trial, the motion was denied, the defendant Pratt excepting. The action was then tried, and at the conclusion of the plaintiff's evidence a dismissal was ordered as against the plaintiff's treasurer. The court found the facts substantially as follows:

In the autumn of 1887 the defendant Hicks came to St. Paul and interested a large number of persons in a project to form the plaintiff company and build and operate a distillery at that city. In February, 1888, the company was organized with a capital of $250,000, Hicks subscribing $100,000, and other persons subscribing and paying in cash for $150,000, of the stock. Hicks was elected vice-president and general manager and continued to be such during all the time covered by the findings. About the time of plaintiff's organization Hicks, Joslyn, and Pratt, all living at Elmira, N. Y., entered into a fraudulent conspiracy to cheat plaintiff, agreeing that the contract to build the distillery should be taken in Joslyn's name for the benefit of Hicks; that Pratt should furnish Hicks the money to carry on the construction, that Hicks should carry out the construction contract, and that Joslyn and Pratt should share in the profits made by Hicks therein. Thereupon, in furtherance of the scheme and at the instance of Hicks, Joslyn put in a bid to plaintiff to build the distillery for $222,000, and Pratt put in a bid at a larger sum, and Hicks had other bids made at still larger sums. Thereupon Hicks, who was familiar with the construction of distilleries and so stated to plaintiff, falsely and fraudulently represented to plaintiff that Joslyn's bid was a reasonable one, and recommended its acceptance. The other stockholders and directors of plaintiff were not familiar with the work to be done, and believed Hicks's representations, and were ignorant that Hicks had any interest except as an officer and stockholder, and accordingly plaintiff accepted Joslyn's bid, and made a contract with him for the building of the distillery for $222,000. Joslyn was an attorney-at-law and was not engaged in or familiar with the construction of buildings, and made his bid and took the contract, not for himself, but in pursuance of the conspiracy, and for Hicks, who was the real party in interest in taking the contract, as Joslyn and Pratt knew, but plaintiff did not know.

During the year 1888, Hicks, acting through Joslyn, built the distillery pursuant to the contract, and at a cost to himself not exceeding $163,000. At the time the conspiracy was entered into, and when the bids were put in and the contract made, Hicks, Pratt, and Joslyn knew that the distillery could be built as required by the contract at a cost not exceeding $163,000; but plaintiff did not know that it could be done for less than the contract price, and did not discover the actual cost until shortly before this action was brought. Of the profit of $59,000 so made by Hicks, he gave $10,000 to Joslyn in stock of the company, and $10,000 to Pratt, pursuant to the agreement between them.

At the time of forming the company it was agreed between Hicks and the other subscribers to the stock that Hicks should advance the first $75,000 to become due from plaintiff to the contractor for building the distillery, and that plaintiff should pay the balance of the contract price out of the moneys received from the other stockholders. Hicks had no money of his own, and it was agreed between him, Pratt, and Joslyn that Pratt should furnish him the money he might need to carry out the construction contract. When the construction was finished Hicks represented to plaintiff and its other directors and stockholders that he had paid out on the construction contract $100,-000, whereas he had in fact paid but $41,000, and this out of the money so advanced to him by Pratt. The representation was made fraudulently to procure from plaintiff certificates of full-paid stock for $100,000, the amount of Hicks's subscription. This representation and its falsity were known to Joslyn and Pratt. The plaintiff, its stockholders and directors, believed the representation to be true, and in reliance thereon the $100,000 of stock was, by Hicks's direction, issued as follows: $10,000 to Joslyn; $30,000 to the wife of Hicks; and $60,000 to Pratt. The full contract price, $222,000, was paid by plaintiff to Joslyn, and by him turned over to Hicks. By reason of the acts aforesaid the plaintiff has been damaged in the sum of $59,000.

Upon these findings the court ordered judgment for plaintiff against Pratt and against Joslyn in the sum of $59,000. A new trial was refused, and the defendant Pratt appealed.

*Flandrau, Squires & Cutcheon* and *Wm. S. Moore,* for appellant.

*Lusk, Bunn & Hadley,* for respondent.

GILFILLAN, C. J. The evidence fully sustains the findings of fact. The assignment of error mainly urged in the oral argument was upon the refusal of the defendants' demand for a jury trial. The right to such a trial had, however, been waived, and after that the defendants, of course, were not entitled to it. It appears from the settled case that at a previous term of the district court, at the time, as we infer, when the general calendar was called to ascertain what causes were to be tried by the court, and what causes by a jury, this case was by the consent of all the parties placed upon the calendar of causes to be tried by the court and was continued, and, at the term to which it was continued, it was by consent set down for trial by the court on a day certain, which consents were entered in the minutes of the court. It was not until the cause came on for trial on the day so set, that defendants demanded a jury trial. It is not claimed—it could not be claimed—that ordinarily, after such consents, either party could insist on a jury trial. The defendant claims, however, that his consents to a trial by the court cannot be taken as a waiver of a jury trial, because, when they were given, the cause was one for trial by the court, and he could not then insist on a jury trial, but that, when the cause was reached on the day of trial, it had changed in that respect, so that it was a proper case for a jury; and that his demand, being made on the first opportunity after he was entitled to a jury trial, ought to have been granted. But there had been no change in the character of the action, or of the issues to be tried. As it was when first placed for trial on the calendar of the district court, it remained to the day of trial. As against three of the defendants named in the summons and complaint, only a money judgment was demanded. As against the other two, equitable relief was sought. If issues had been made by all the defendants so named, and all were to be tried together, it would have been a case for the court, and not a jury. But the two against whom equitable relief was asked were not served with process, and did not appear in the action. As to them and as to the issues tendered on which equitable relief was asked, there could be no trial. All that could be tried was the issues as to the other de-

fendants, against whom only a money judgment was asked, and those issues tried alone were for a jury. That was always the condition of the case.

There was a large number of exceptions to the admission of evidence, upon which errors are assigned. They are all of the same general character, and may be all disposed of together. The action was for a conspiracy to defraud plaintiff. The evidence objected to was of conversations and correspondence between two of the defendants other than the appellant Pratt, tending to show a plan to defraud plaintiff originating with them. The conspiracy was charged in the complaint against all the defendants but Mrs. Hicks. In such an action, the plaintiff may recover against some of the defendants, to wit, those against whom the allegations of conspiracy and consequent fraud and damage are established, and fail to recover against the others. The cause of action is not joint as in an action on a joint contract, or on a liability joint, but not several. So in a case like this, evidence of the alleged conspiracy is admissible, even though the same evidence do not connect all the defendants with the conspiracy. If it were not so, it would be nearly impossible to try such cases, certainly cases in which the conspiracy is planned by some of the defendants, and the others afterwards join it. If, when the evidence is all in, it does not connect one of the defendants with the conspiracy, his proper course is to move for a dismissal, or for an instruction to find a verdict in his favor. There was no error in overruling the appellant's objections to the evidence.

A question is made as to the measure of damages applied by the court below. The conspiracy by the defendants Hicks, Joslyn, and Pratt found by the court was in effect to make a profit for the three, by procuring from plaintiff, by means of the fiduciary relation in which defendant Hicks stood to it, as its vice-president and trusted agent, a contract ostensibly in the name of Joslyn, but really to be executed by Hicks, for the construction of the plaintiff's buildings. Stated in other words, it was a plan that Hicks should use the confidential relation between him and plaintiff, not for the benefit of the plaintiff, his principal, as was his duty, but for the benefit of himself and the other two, and to the detriment of the plaintiff. The con-

tract running to Joslyn was procured as planned, the price in it for the work being $222,000. The work was done and that price paid. The total cost of the works to Hicks, done by subcontracts, was $163,-000. The three defendants knew that the cost would not exceed that, when they procured the contract at $222,000. By the collusion of the three, the work cost plaintiff $59,000 more than it would have cost had Hicks performed his duty to plaintiff to have the work done at the lowest cost to it. This difference the court adopted, and properly, as the measure of plaintiff's damages. But appellant claims that, because, in the subscriptions to plaintiff's stock, the subscribers other than Hicks agreed "to pay thirty per cent. of our subscription as soon as the said George W. Hicks has expended seventy-five thousand dollars ($75,000) on the said distillery plant," Hicks's rights and duties in respect to the $75,000 were those of a contractor, and not of an officer of the plaintiff, and therefore to that extent the cost of the work to him was not a proper factor in determining the damages. This must assume that under this stipulation Hicks had a right to charge, as expended by him, more than the actual *bona fide* cost to him; that he might actually expend $30,000 and charge what the result of the expenditure was worth to plaintiff—$75,000, if he could show it to be worth so much. That was not the stipulation. He was as much bound to make that expenditure faithfully, as much disabled to make a profit to himself out of it, as in respect to any other expenditure by him. But it is enough that he did not expend a dollar independently of the fraudulent contract. Other objections to the measure of damages are made, but this is the only one we deem it necessary to specifically mention.

Order affirmed.